ORDERED in the Southern District of Florida on _02/27/07_.



_____
Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:                                           Case No. 06-16243-BKC-RBR

YELITZA ORTIZ,                                   Chapter 7

   Debtor.
_____/

### MEMORANDUM OPINION VALUING COLLATERAL FOR PURPOSES OF REDEMPTION.

THIS MATTER came before the Court for evidentiary hearing on February 22, 2007, on the Debtor's Motion to Redeem Collateral (C.P. 19) and the Response of Ford Motor Credit Company (hereafter "FMCC") (C.P. 21). This case was filed on November 30, 2006, and as such is subject to Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (codified in scattered sections of 11 U.S.C.).

### Findings of Fact:

The Debtor entered into a retail purchase agreement for a 2005 Ford Focus. The Ford Motor Credit Company holds a valid lien on the car. The car, in its current state, is not in retail condition and requires extensive repairs and maintenance. The Court has examined the 23 color photographs in evidence and finds the following defects, features, and parts in need of repair: collision damage, vandalism, misalignment, body paint, tires, and interior cleaning and refurbishing.

The parties stipulated at the hearing to the qualifications of the two expert witnesses and each witness testified and submitted into evidence their written approaches.

## Conclusions of Law:

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A),(K),and (O).

Pursuant to 11 U.S.C. §722 a Chapter 7 Debtor has the right to redeem exempt personal property from a valid lien by paying the holder of that lien "the amount of the allowed secured claim... in full at the time of redemption." 11 U.S.C. §722. However, the value of a secured claim is governed by 11 U.S.C. §506. The issue before the Court is what test should be applied to determine the value of the car. The Debtor claims the value to be the market value of the vehicle. FMCC alternatively argues that the value should be the retail value of the vehicle.

Prior to the changes made by BAPCPA, case law in the Eleventh Circuit supported the position that the value was the wholesale value on the date of the hearing. See In re: Perez, 318 B.R. 742, 747 (Bankr. M.D. Fla 2005)(noting "the apparent unanimity of all of the reported cases, which have reached the same conclusion in applying the wholesale/liquidation-value standard as the appropriate standard for valuing collateral in Chapter 7 redemption cases."(internal quotations and citations omitted)); accord In re: Foreman, No.05-5811-3F7, 2006 Bankr. LEXIS 2175 at *4 (Bankr. M.D. Fla. 2006).

With the adoption of BAPCPA, §506(a)(2) was added, it reads:

> If the debtor is an individual in a case under chapter 7 or 13,such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

Accordingly, under BAPCPA the value must be the "replacement value". What is unclear

Page 2 of 5

from the statute is when this "replacement value" is to be calculated. The first sentence of the statute states that the "claim shall be determined based on the *replacement value* of such property *as of the date of the filing of the petition* without deduction for costs of sale or marketing." 11 U.S.C. §506(a)(2)(emphasis added). The second sentence reads "*replacement value* shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property *at the time value is determined*." 11 U.S.C. §506(a)(2)(emphasis added).

In this case, as occurs in many others, the valuations submitted by both parties were conducted well after the petition date. The motion was filed on January 16, 2007, approximately two months after the petition was filed. FMCC's valuation was conducted on January 25, 2007 and the car was listed as having an odometer reading 32,739 miles. *See FMCC Exhibit A*. The Debtor's appraisal occurred sometime after the FMCC inspection but on or before February 8, 2007. The findings of the Debtor's expert are dated February 8, 2007, and the odometer reading is 33,174 miles. *See Debtor's Exhibit 1*. Since neither party has conducted appraisals which value the car as of the petition date the Court will use the "replacement value" "at the time value is determined".

The statute also directs the Court to consider "the age and condition of the property". In considering the age and condition of the car the Court must account for those parts or features of the car that must be repaired or refurbished to bring the car to "the price a *retail merchant would charge*". The new statute makes clear that retail value is the measure for replacement value. The statute is unclear on how to arrive at such a measurement.

One approach might be to arrive at a dollar figure for the car "as is" with all of the defects, even if the car "as is" would never be available on any retail lot. In this case the defects or areas that need repair include: collision damage, vandalism, misalignment, body paint, tires, and interior cleaning and refurbishing.

In the "as is" scenario the Court would take the retail value of the car by determining the value a hypothetical merchant who makes no repairs would charge for the exact car, even if no merchant would ever carry the car in its current condition. This test, is best reflective of the literal

meaning of the statute. The statute states "the price a retail merchant *would* charge" the use of the word "would" strongly suggests that the measure is a hypothetical one. See 11 U.S.C. §506(a)(2)(emphasis added). This would probably be done by estimating the wholesale value of the car and adding to it a retail markup. However, estimating the wholesale value of a car that is not at retail standard would require the Court to engage in mere guess work. Such a measure would highly unreliable and difficult to implement.

The alternative test is to take the retail value of an identical make and model car then deduct from it the retail value of the repairs required to bring the car up to retail standard. This alternative or "retail standard" test is more easily determined because the retail value of cars is relatively consistent, as are the retail costs of repairs. However, this test works on the assumption that the retail value of a non-retail standard car is the retail price of an identical car less the retail price of repairs. The Court believes this assumption to be a reasonable one.

The Court notes FMCC's position that the valuation should be the retail value of the same make and model car less the wholesale cost of repairs. This position is based on the fact that Ford can repair cars for much less then retail public. As such, they argue that only this deeply discounted cost of repairs should be taken into account. The Court declines to adopt this approach. The statute clearly makes the price the retail buying public pays the standard for the replacement value. This same standard should apply when taking into consideration "age and condition", which form the data inputs used in determining the ultimate replacement value. Thus, the Court will use the retail repair value for its deduction.

Accordingly, the Debtor's expert found that the retail cost of repairs to the car would be approximately $2,723.00. This was broken down as $1,923.00 to recondition the exterior of the car, plus $400.00 for new tires and $400.00 for repairing the interior. FMCC expert's repair estimate is not going to be considered because he used a wholesale cost of repair. Therefore, the Court determines that the actual retail price of the repairs is $2,723.00.

FMCC's expert testified that he would determine the retail value of a similar car by taking

the NADA value adding it to the quotes from two dealers and then dividing by three. His retail value result is $11,841.67[1]. Debtor's expert testified that after repairs and reconditioning the retail value of the car would be approximately $10,500. The Court will average in the Debtor expert's retail figure of $10,500 to FMCC expert's figure of $11,841.67. The retail price of an identical car is thus determined to be $11,506.25. Therefore, the final replacement value of is $8783.25[2].

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

Copies furnished to:

Timothy S Kingcade, Esq
Soneet Kapila
Office of the US Trustee
Kenneth M. Jones. Esq.
Ford Motor Credit Company.

---

[1] According to FMCC's expert NADA value is $12,025.00; Dealer #1's value is $12,000; Dealer #'2 value is $11,500.

[2] The mathematical calculation is $11,506.25- $2,723.00 = $8783.25